284 So.2d 442 (1973)
Joyce C. GOLPHIN and Leavitis Golphin, Jr., Individually, and As Husband of Joyce C. Golphin, Appellants,
v.
The HOME INDEMNITY COMPANY, a Foreign Corporation, Appellee.
No. S-255.
District Court of Appeal of Florida, First District.
October 16, 1973.
Rehearing Denied November 15, 1973.
Michael D. Chiumento, Jr., Stern, Bernardini & Chiumento, Daytona Beach, for appellants.
E. Clay Parker, Hoffman, Hendry, Parker, Smith & Anderson, Daytona Beach, for appellee.
WIGGINTON, Judge.
Defendants seek appellate review of a final declaratory judgment rendered against them in which the trial court found that their claim for damages against plaintiff-appellee was not covered by the uninsured motorist provision of the automobile liability insurance policy issued by it.
The controlling facts in this case were stipulated to by all parties and may be summarized as follows. Appellee, Home Indemnity Company, issued its automobile liability insurance policy to one Clara Woods Mitchell covering an automobile owned by her. The insurance policy contained the minimum limits of public liability coverage as required by the financial responsibility law, to wit, $10,000 per person and a maximum of $20,000 for each accident. In addition, the policy also contained the standard uninsured motorist provision carrying the same limits of liability as the public liability coverage expressed in the policy. Appellant, Joyce C. Golphin, was riding as a passenger in the insured vehicle operated by its owner Clara Woods Mitchell, when it collided with another automobile operated by one McDonald in which a passenger, Mrs. Howell, was riding. McDonald and Howell, occupants of the other automobile, both suffered injuries, and claims were made by them against Mitchell and her insurer, appellee herein. As a result of these claims, appellee paid to the claimants, McDonald and Howell, the sum of $10,000 each for an aggregate payout *443 of $20,000 under the public liability provisions of its insurance contract, thereby exhausting the limits of the policy.
Thereafter, appellant, Joyce Golphin, and her husband, Leavitis Golphin, Jr., in his derivative capacity, made claim against appellee under the uninsured motorist provision of the Mitchell insurance policy claiming that since the public liability coverage against which their claim would otherwise be applicable had been exhausted by payments to McDonald and Howell, the Mitchell vehicle was thereby "uninsured" within the meaning of appellee's insurance contract. Appellee denied coverage and then filed this action seeking a judicial declaration of its rights and obligations under its insurance contract with Mitchell.
The trial court, in the judgment appealed, posed the sole question for determination as follows:
"is a vehicle `uninsured' under the terms and conditions of the subject insurance contract and Florida Statute § 627.727, where there is applicable liability insurance available at the time of the accident, in the minimum amounts as required by the Florida Financial Responsibility Law, but the limits are subsequently exhausted thereunder by payment to multiple claimants?"
We are of the view that the question posed and decided by the trial court accurately presents the issue of law to be decided in this case. The controlling statute, which requires the inclusion of uninsured motorist coverage in each automobile liability insurance policy issued in this state, describes an uninsured motor vehicle as follows:
(2) For the purpose of this coverage the term "uninsured motor vehicle" shall, subject to the terms and conditions of such coverage, be deemed to include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency.[1]
The insurance contract issued by appellee, in the uninsured motorist provision contained therein, defines an "uninsured automobile" as follows:
"II. DEFINITIONS (IV)(c) `uninsured automobile' means: (1) an automobile with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder;... ." [emphasis supplied]
From the foregoing it affirmatively appears that the insurance policy involved in this case against which claim is made by appellants defines an uninsured automobile as one "in which there is no bodily injury liability insurance policy applicable at the time of the accident with respect to any person legally responsible for the use of such automobile". The above-quoted section of the statute defining an uninsured motor vehicle clearly recognizes the right of the insurance carrier to regulate the coverage afforded by it by using the qualifying phrase, "... subject to the terms and conditions of such coverage ...", and further provides that an uninsured motor vehicle within the meaning of the statute also includes one which is in fact insured but where the insurance carrier is unable to make payment on its policy because of insolvency.
From the stipulated facts in this case, the motor vehicle owned by Clara Woods *444 Mitchell, which was covered by the insurance policy issued by appellee, was not an "uninsured automobile" under the terms of appellee's policy because there was applicable at the time of the accident bodily injury liability insurance answerable to any claims against the insured (Mitchell) who was legally responsible for the use of the covered automobile. At the time of the accident appellee's insurance policy was as equally answerable to the claims of appellants as it was to the claims of the injured occupants of McDonald's automobile to whom the full limits of the policy coverage were paid by appellee. The fact that the amount available under the public liability coverage of the policy was exhausted before appellants made their claim against appellee does not in itself render the insured vehicle an "uninsured motor vehicle" within the purview and meaning of the statute. Furthermore, it is obvious that at the time of the accident, and at all pertinent periods subsequent thereto, appellee, as the insurance carrier for the vehicle owned by Mitchell, was wholly solvent and able to make payment with respect to the legal liability of its insured within the limits specified in the policy. Because of the foregoing facts, the Mitchell vehicle was not an uninsured motor vehicle within the definition of the statute.
The uninsured motorist provision of our statute is intended to impose a minimum area of coverage in an uninsured motorist tort situation. The insurer is liable under its policy only in those instances where the guilty tortfeasor is either uninsured or its insurance carrier becomes insolvent within a period of one year after the tort is committed and is unable to respond to damages under its insurance policy. Such limited coverage may not be extended except by clear and unambiguous provisions of a duly enacted statute or the insurance policy sued upon.[2]
The insurance policy in the case sub judice contains no provisions purporting to extend or expand the coverage beyond that required by the statute. Despite this, however, appellants contend that even though the tortfeasor in this case, to wit, the insured-Mitchell, did carry public liability insurance coverage on her vehicle which was available at the time of the accident to answer the claims of appellants, nevertheless such coverage was exhausted by payment to other injured parties prior to the time appellants made their claims against the tortfeasor and, therefore, the policy coverage should be extended under the uninsured motorist provision to afford protection to them. On the basis of reason, logic, and established principles of statutory and contract construction, such contention must be rejected.
In the case of Continental Insurance Co. v. Wallace[3] the Third District Court of Appeal likewise refused to expand by implication or construction the uninsured motorist coverage contained in a standard liability insurance policy issued in our state. There, an insured motorist was injured through the fault of a third-party tortfeasor whose vehicle was likewise covered by automobile liability insurance in the minimum amounts required by the financial responsibility law. The plaintiff-insured recovered from the tortfeasor's insurance carrier the full limits of its policy, but such amount fell short of the total amount of damages suffered by the plaintiff. He therefore turned to his own insurance company and made demand for payment of the balance of the damages which he suffered under the uninsured motorist provision of his own policy. Such demand was predicated upon the contention that the third-party tortfeasor was uninsured as to the excess amount of damages suffered by him over and above the third party's insurance coverage. In rejecting such contention, the Third District Court *445 held that since the third-party tortfeasor carried liability insurance coverage in the minimum amounts required by law and paid the full amount of that coverage to the injured plaintiff, the tortfeasor was not an uninsured motorist and, therefore, the uninsured motorist coverage provided by the injured plaintiff's own insurance carrier never came into operation. A like conclusion on similar facts was reached by this court in the case of Gordon v. Phoenix Insurance Company.[4]
We are not unmindful of nor have we failed to carefully consider the several decisions rendered by the appellate courts of Arizona on which appellants rely for reversal. The rule of law established by such decisions is fully explained and set forth in the case of Porter v. Empire Fire and Marine Insurance Co.[5] The courts of Arizona, in construing the uninsured motorist requirements of the Arizona statute and the implementing provisions contained in the automobile insurance policies issued in that state, have reached a conclusion contrary to the one reached by us as set forth herein. The reason for the difference appears to be rather obvious. The underlying public policy of the Florida statute is to provide protection of persons insured under automobile liability insurance policies for claims which they are legally entitled to recover from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting from the negligent operation of such uninsured vehicles. The courts of Arizona have placed a much broader construction on the uninsured motorist provision of the Arizona statute by holding that, under the public policy of that state, the uninsured motorist requirements are for the protection of insured persons who are legally entitled to recover damages suffered by them not only from owners or operators of uninsured motor vehicles but also from owners and operators of vehicles whose liability insurance is not sufficient to pay the full amount of the damages claimed by the injured insured. The Arizona statute contains no definition of an "uninsured motorist", so the courts of that state have created their own definition by holding that an uninsured motorist is either one who has no liability insurance whatever or one who is financially irresponsible because his liability insurance is not sufficient to meet in full all claims made against it. Such construction contrasts from the definition of an "uninsured motorist" as set forth in the Florida statute which is defined to be a motorist who carries no liability insurance for the protection of third parties who may be injured by the use or maintenance of the uninsured vehicle or a motorist whose vehicle is insured but his insurance carrier becomes insolvent within one year from the date the damages suffered by the claimant were incurred. As a result of the construction placed by the courts of Arizona upon the uninsured motorist provisions of its financial responsibility law, an insured motorist is entitled to claim against his own insurance carrier under the uninsured motorist provision of his policy any excess of the damages suffered by him over the amount he received from the financially irresponsible third-party tortfeasor where the insurance carried by such tortfeasor is not sufficient to pay all claims made against it. Such holding is contrary to the public policy of this state as expressed in the uninsured motorist statute and is contrary to the construction placed upon that statute by the appellate courts of this state.
For the foregoing reasons, we hold that the trial court did not err in the conclusions expressed in the final judgment rendered in this cause, and the judgment is accordingly affirmed.
RAWLS, C.J., and DREW, Associate Judge, concur.
NOTES
[1] F.S. § 627.727, F.S.A.
[2] Insurance Company of North America v. Strauss (Fla.App. 1970), 231 So.2d 548.
[3] Continental Insurance Co. v. Wallace (Fla. App. 1970), 233 So.2d 195.
[4] Gordon v. Phoenix Insurance Company (Fla. App. 1970), 242 So.2d 485.
[5] Porter v. Empire Fire and Marine Insurance Co., 12 Ariz. App. 2, 467 P.2d 77; 106 Ariz. 274, 475 P.2d 258.